Good morning, your honors. May it please the court. Give us one second. We're flipping through our good readers to get to your case. Flip everything over, right, right, right, exactly. They're a lot lighter than carrying the briefs around, but you do have to line them up. I wish I had one. I highly recommend them. Okay, now we're all set. Thank you, your honors. I'd like three minutes of rebuttal time, please. May it please the court. I have four issues to address today, and I propose to start with the Law Society of England and Wales. The Law Society of England is a private professional organization with a regulatory component, the Solicitor's Regulation Authority, or the SRA. It is not, however, a foreign state organ, as this court has interpreted that term in the PowerX case. In fact, it has failed to meet its burden, both prima facie, let alone preponderance of the evidence, to show organ status because it failed to meet five of the six PowerX factors and the sixth factor we would propose is neutral. The Law Society provided no evidence that it was formed and treated as a government entity under U.K. law in contrast to the PowerX entity, which was formed and treated as a government entity under British Columbia law. In fact, it was formed by solicitors as a sort of self-policing organization. Right, but it's morphed over time, to use some slang, and why isn't that sufficient? Well, it has morphed over time a little bit in one sense. So it was originally created by solicitors, and then there was a law that codified some of this. But at all times, the Law Society had a regulatory component. So the fact that there was a statute later that gave certain statutory elements does not change the fact that it was not, as in PowerX, created and formed by the government. So I'm trying to get you to focus on the not that it was created, how it was created. I don't dispute that, but the record does indicate that, as I said, it has morphed over time, and I'm not sure you've really answered that part of my question. Well, I don't think the fundamental aspect, which we're here on today, which is whether it's a foreign organ, has changed. I would say that even today, it is still not a foreign state organ. I want to ask you a question, and it cuts across several of the defendants. Your client withdrew the appeal in the U.K. of the underlying order. I'll call it a disbarment order, just for ease of reference. Could your client have raised the claims against the, I want to get the initials right, the SRA and the LSE, that it's now raising, in this case, in that appeal? As a matter of law, under U.K. law, I don't know U.K. law, so I don't know they do. Because it seems to me what the argument is that the case against me was wrong, and you guys conspired to put a case against me. And there was an appeal available to you of the underlying disbarment order that you dropped. And so when you're suing the people who, in effect, instituted the underlying disbarment proceeding and you've dropped the appeal of the proceeding, don't we have to assume that under, because U.K. entered the disbarment order, that they acted correctly? Well, I don't think it's just that it was a wrong decision. It's also a tarnishment of the reputation of both Mr. Meris Gundari and Mr. Baxander Walker. But let's assume that the underlying disbarment order is valid because it was not challenged on appeal and it rests on some findings. How can we then say that the people who prosecuted that did something wrong? I mean, if you're going to attack a criminal conviction later, you've got to first at least appeal it before you come back to us and say you were wrongfully prosecuted. Why doesn't that principle apply here? And that cuts across the defendants, I think, to some extent, not completely. Well, our position is that damages are being sought for damage to reputation because of the conspiratorial nature of how they went about the investigation which brought down Mr. Meris Gundari. And so you're not seeking any damages at all that result from the disbarment? Not directly. It's more for the damage. Let's assume he was appropriately disbarred, as we have to assume because you dropped your appeal in England. How can the method by which they went around the investigation that led to his disbarment hurt him more than the disbarment? Well, it's both. It's the disbarment tarnished the reputation, but all the steps that led to the disbarment, in other words, the process. Well, but don't you have to challenge the process in England? That's my question. I mean, I'm sorry, Judge Berger. He did. He did at first. I just don't think you're answering the question, though, because the premise is if the disbarment was appropriate and you have to answer the question in that light. Well, we, of course, contend that the disbarment was not appropriate. But you dropped your appeal. You're not pursuing it. I understand that. I understand that. You dropped your appeal. If your appeal were still pending, I'd understand all that. If you were challenging a district court order in the United States and claimed that people got together to conspire to do something to you and you dropped your appeal of the order, I would say we have to treat that order as valid. And so my question is, treating the U.K. order as valid, what claim do you have against anybody? Well, I was not the lawyer who dropped my appeal. No, I don't mean you personally. I don't think the... Your side. But there might have been reasons beyond what we're seeing as far as this case goes. But I'm focusing, and I'd like your honors to focus, on the legal issues of why Judge Bernal erred on these legal issues. What are your best arguments that he erred? Well, number one, he erred on the ground that they are not a foreign state organ. Number two, which I'll get to a little later, the claim-splitting doctrine we contend was error. Did you make an application to find exceptions? I'm sorry? Did you make an application to find exceptions to his finding that they're a foreign state organ? Well, we... So he ruled that they were a foreign state organ. Right. And he dismissed with prejudice, which we also contend was error, because we should have had an opportunity to plead that there were exceptions. That's what I'm asking. Yeah. So there were requests made to amend, both in argument and in written motions. And was that dealt with? No. Did he address it at all in his order? He said that Mr. Mears-Sundari and Mr. Baxton-Dillwalker had failed to plead exceptions. He did not address... And your contention is that you did seek exceptions? Absolutely. Did you file the motion to amend the complaint that had exceptions in it? No, it wasn't technically a motion to amend the complaint. It was within the argument. We basically... But you just said there was a written. I'm familiar with the statement made in the oral argument, but what was the written motion you just referred to? So there was the opposition to the motion, to the LSE's motion, saying we're a foreign state organ. And we said, no, they're not, but if they are, we'd like an opportunity to plead exceptions. And also, in the end of the motion, in the conclusion, it said we'd like the opportunity to plead around any errors. Okay, so you did... As opposed to an actual motion? I'm sorry. Yes, there was no stand-alone motion to amend. That's what's confusing. That's what confused me, too. Thank you. Correct. Going back to the Law Society, its oversight board, the Legal Services Board, which, by the way, just oversees the SRA, the regulatory component, as well as all the approved regulators in the UK, it publicly proclaims its independence from the government, both on its website, and as we submitted in our motion to supplement the record, he said, the director of that entity said, we, that is the Legal Services Board, are independent of government, and so is the Law Society and the SRA. Also, the UK government itself has not come forward with an amicus or other document, in this case, to say, oh, yes, the Law Society is a government organ. Is the Law Society's chairman appointed by the Lord Chancellor? No. The Legal Services Board's members are appointed by the Lord Chancellor. LSC. Correct. The oversight entity of just the SRA portion. Okay. In fact, in another context... The Legal Services Board, yes, but not the Law Society. Yep. All right. In another context, in the X versus United Kingdom case, the UK government argued that it should not be held responsible for the acts of the Law Society, arguing many of the same factors that this court has found important in the PowerX case. Also, the employees of the Law Society... What? They argued it. What happened? Well, it wasn't, that wasn't part of the holding. It was an argument that was made, but that wasn't part of the holding. The employees of the Law Society are non-governmental, non-civil servants. The society receives no... It's not controlling. It's not controlling, but it is a factor, and this court has made clear in the PowerX case that it's a factor. The society receives no government funding. It pays income taxes, and any excess profits are not remitted to the Crown. Also, importantly under this court's Alperin case, they do not enjoy sovereign immunity in their own courts. Now, to be candid, there is a case out there called the Gates versus Victor Fine Foods case, which does address a regulatory entity, but I'd like to distinguish that case, which, by the way, was not raised by the Law Society. The Sparta Surgical case, this court's case, makes clear that regulatory immunity is not sovereign immunity, and in any event, the Gates case is distinguishable on many grounds. Number one, the Law Society has both a regulatory component and a representative component, which is forbidden by law from carrying out any sort of regulatory function. Also, the trade association in Gates had much more direct government control than is present here. In fact, the Law Society can issue regulations which bind solicitors without any government intervention. Can I ask you, because you're kind of running out of time here, what about the individuals? So we contend that the judge made a very clear error because he found that they were immune under the Foreign Sovereign Immunities Act. The Salmon Tar case makes quite clear that the individuals are not governed by the Foreign Sovereign Immunities Act. So just on that discrete ground alone, you would need to remand.  The first of all, we contend they waive it, and Hegarty was a private solicitor entitled to no immunity at all. What about Patrick Rohrbach? What about that individual? Sure. As to Mr. Rohrbach, he contends that this Court should rule that he has absolute immunity merely because he's a witness. That's not the law. In the trial court, he argued a 12B6 theory as well, right, and said you didn't have a claim against him because all he did was explain that this person wasn't admitted to the bar and so forth. I don't want to use up your time because you know very well what the facts are. We can affirm on any basis that the record suggests. What's the claim against him? What did he do wrong? So he provided a witness statement to an administrative panel before any charges were brought, which was used to justify a raid on Mr. Miros Gundari's office. As a result of a bribe, right? That's the allegation, and also that the statement is false. I'm sorry. And what's the basis of the bribe allegation? Well, it's based on information and belief at this point. Okay. Let's look at the statement. I find the bribe difficult to believe, but put that aside. The statement says, I've looked at a bunch of statements you've given me, and if that conduct occurred, it would require that one be a member of the bar in California. And I've checked, and Mr. Miska, your client, is not. Why is that actionable? Why is that actionable? It strikes me as A, perfectly accurate. He doesn't say any of the stuff in the statements is true. He just says, I've looked at these statements, and this conduct requires being a member of the bar. Well, it was used to justify the raid, which then started to come down. Well, and the people who used it to justify the raid may be the worst people in the world. But if all he said was, and by the way, it seems to me completely accurate. If these statements are true, they constitute the practice of law in California. He doesn't say they're true. He doesn't say, no, of my knowledge, they're true. He makes quite clear, you've provided me with these statements, and I've looked at them, and if these are true, then they're the practice of law. What? Put aside the basis on which the Court dismissed it. Why isn't this just the purest 12b-6 we've ever seen? What tort has he committed by doing that? Well, I think that the allegation is that it was based on false information, and that made the conclusion false, which then let us down. Counsel, you have to focus on our question, which we're all three trying to ask here in your few minutes left. What did this person, Patrick Rohrbach, do that was wrong? People who gave him false information may have done all sorts of bad things. What about him? What did Mr. Rohrbach do that was wrong? Our contention is that his false declaration set into a chain of events. What about his declaration was false? Well, I think that it's based on the false information. That's the best I can do today. That's the best your answer. Then I'm going to go on to my next question, which is the physician whose name I'm having a hard time pronouncing. Dr. Rothman. Thank you. I think doctor, right? Yes. From Virginia. Yes. All right. Do you want to speak to that? I'm going to assume, given your time, that there was a third amendment complaint that had been filed with the pages, all the pages in it, indicating a defamation action. Yes. What's the error as to this individual? He is subject to specific personal jurisdiction because he intentionally defamed Mr. Miroskindari, two persons in California. So the issue, I think, again, sorry to interrupt, but the issue is did he know he was communicating to somebody in California? What's your best evidence of that, please? We have the deposition in which he admitted it, which is part of our motion to supplement the record, and also it's pled. It makes no sense that he would. It's not pled. I've looked very carefully at the third amendment complaint, and it says he was talking to a physician. It doesn't say that he knew where the physician was or, you know, who placed the call. In the email, it says that he was going to. That's different. Now you're talking about the email, but first focus, if you would, on the phone call. If you're calling California, you know you're calling California. The complaint doesn't say who placed the call. It was him, for sure, but even in the Brainerd case. Counsel, counsel, you didn't plead it, right? But even in the Brainerd case. Counsel, you really, a yes or no would be really helpful here. I have to look at the complaint, Your Honor, and I can do that when I'm preparing for the report. All right. Do you want to move on to the email? Sure. I would also like to say that it's not required that the call be placed by Mr. Rothnemaugh under Your Honor's own authorities in this case. But the issue is this is not a trivial point. The issue and the problem was on the defamation cases, whether or not he was communicating in California. So it does matter who placed the call. How did he know? There has to be something that indicates that the physician in Virginia knew he was communicating to somebody in California. So we think that it's very clear that he knew he was communing with people in California. Because? Because the email address was. . . Now you're going back to the email again, but I was looking at the phone call. There's both. There's a phone call and there's an email address. We would say as to the phone call, he knew he was calling California. He would have, as in the college source case, he would have had to. . . Okay. So where do I look in the record to give me this other evidence that you're offering now? Because it's not in the complaint that he knew that he placed the call. Look at the motion to supplement the record, please, which has his deposition where he admits all of this. When did. . . Do you have the site for me? Sure. The motion to supplement the record was filed. . . Let's see. Did the top court have it? No, we filed the motion to supplement the record with your honors, and it was. . . So that's completely different. I'm trying to figure out then if you're talking about that motion to supplement. Did you file something in front of the trial court? Well, we relied very heavily on our allegations. So that's a no? That's a no. Okay. Well, I have one more question. We did not file the deposition because it hadn't taken place at that time. Okay. Well, I have one more question for her on this point. It appears that the trial judge just overlooked the defamation claim, maybe because the pages were missing. If he did, should we just send it back to him and ask him to rule on this? Because there's a whole bunch of motions to dismiss with respect to this defendant. Why should we take up one issue, and if the trial judge missed it, why don't we just send it back to him and say, you decide whether there was personal jurisdiction, and maybe you don't have to because maybe one of the other motions to dismiss works. Is that the appropriate remedy with respect to the physician? I don't think so. I think that it's very clear that under Walden . . . Well, if it is, then you'll win. I'm sorry? If it is, then you'll win. We generally don't take up issues for the first time on appeal that the trial court didn't treat. Right. And so why would your client be prejudiced if we just sent the whole ball of wax back on this defendant? Well, it's certainly an option that we're open to, but we'd ask that you rule as a matter of law that he is subject . . . I know what you asked. I'm asking is there any prejudice to you from us doing it that way. How is your client heard if we do it that way? I don't think there's prejudice because we feel very strongly that he's subject to personal jurisdiction. Thank you. You're significantly over your time. If I could ask that opposing counsel to come to the podium, please. May it please the Court, Danielle A. on behalf of Respondent Rohrabach. There's four respondents, so we just want to split our time equally. Manage your time. Okay. First of all, the Court is exactly right. Mr. Rohrabach didn't do anything wrong. He had a hypothetical discussion about hypothetical activities that may or may not subject someone to criminal prosecution . . . and may or may not affect someone's application. What if he took a bribe? It's alleged. Yes. That he took a bribe. What if he gave a perfectly true statement as a result of a bribe? Is that actionable? No, because he's the witness. He has immunity. Well, put aside witness immunity for a second. Assume there's no witness immunity. I'm focusing on the 12B6 issue that we were raising. So, one provides a witness statement. No immunity for purposes of my question. As a result of a bribe, but the witness statement has no false facts in it. Is that actionable? No. There's no harm. There's no false testimony. Counsel, could I get you to shift gears? I'm also worried about your time. Why isn't opposing counsel spot on when she says that the Foreign Sovereign Immunities Act doesn't apply to individuals? All of the actions that Mr. Rohrbach took were in . . . Now I'm talking about . . . I'm shifting gears. Perhaps that wasn't clear enough. We're talking about Maine, Lees, Middleton, Hagerty. To follow up on Judge Burgess' question . . . Or do you want somebody else to respond to that? I think that's really somebody else. I'm sorry. Who are you? She's Mr. Rohrbach. She's just Mr. Rohrbach. You're just Mr. Rohrbach? Yes. Okay. Perhaps when you each come up, you could tell me. Forgive me. All right. Go back to his question about Mr. Rohrbach. About Mr. Rohrbach. So if the declaration is truthful, then whether or not he takes money doesn't create an action . . . doesn't create a cause of action. Because the underlying cause of action here seems to be for defamation or conspiracy or something, right? It's a RICO violation. Supposedly, everybody conspired to disbar the appellants. And how they did that was gathering false testimony from witnesses. And if the testimony is not false, where's the actionable harm? I think I understand you. Do you have anything else to say on behalf of Mr. Rohrbach? I do not. Okay. Thank you. Thank you. If you don't tell me who you're representing, I'm not . . . Sir, I'm not going to know which page to be on. So, please. Good morning, Your Honor. Good morning. I'm Christopher Heck. I'm representing Dr. Munzer-Rodema. Okay. So, can we talk . . . can you talk about the phone call and the e-mail? Oh, yes, Your Honor. E-mail. I think you correctly pointed out in the questioning of opposing counsel that there is no allegation as to whether or not my client knew when he was sending the e-mail to whom he was sending it, whether it was in . . . He knew who he was sending it to, but whether that person was in California or not. For purposes of a motion to dismiss for absence of personal jurisdiction, I'm not focusing on the RICO claim at the moment. I'm focusing on the defamation claim. Isn't there enough here to survive a motion to dismiss? He calls somebody who is in California. The complaint maybe doesn't allege it. Do we know who called whom? I do not know that, Your Honor. I don't know that it's necessarily in the record. I know the counsel did include a deposition transcript taken of my client in another matter where he was merely . . . Well, did the talk court have that deposition transcript? No, Your Honor. That was taken after this case had already been dismissed. It's not on the record. Okay. But going back to Judge Hurwitz's question, there is an e-mail, and the complaint alleges there's this e-mail. And it's got a tagline on it. It's got an e-mail address that includes . . . I just looked at it. LA doctor or LA physician or something. Doesn't that give him a heads up that he's communicating to someone in California? It may very well have, Your Honor. My view about that is even if it turned out that Dr. Rahnemann knew, and it's not been alleged, even if it turned out that he knew he was communicating to somebody in California, that would not be sufficient for a finding of jurisdiction here. Really? Why not? Let's assume that I call Judge Kristen's former law partners in Alaska, and I know I'm calling them in Alaska, and I say, you know, I've been sitting with her for the last week, and she's been taking bribes to take something from this case. And that's completely false. Haven't I defamed her in Alaska? Haven't I reached out to Alaska to harm her reputation? Well, yes, Your Honor, you would have. But in that case, Judge Kristen actually has a reputation in Alaska to be harmed. In this case, all of the allegations of harm allegedly arising from this defamation, every single allegation talks about destruction of the plaintiff's law practice in England. Isn't there a distinction between the RICO and the defamation claim? Because isn't the harm, I mean, the defamation harm can be in California. Well, the defamation. And the RICO allegation goes to the activities to the disbarment activities in England. And that's why I was focusing on the defamation claim, because the RICO claim, there's no damage in California. He alleges damage to his personal reputation. Yes, he does. Why does that have to be in England? Well, actually, Your Honor, he alleges his damage to the loss of his business and damage to his reputation in his law practice. If you take a look at the allegations in the Third Amendment complaint, that's actually how it's phrased. And you think there isn't an allegation here that his personal reputation was damaged? The plaintiff has claimed that he was living in California at the time. He says these slanderous falsehoods added tension to his personal relationships. May not be able to prove a lot of damage from them, but he does claim. And surely that defect, if it is a defect, could be cured by amendment. Well, Your Honor, this is the fourth time they've tried to plead a claim against my client and these other defendants, and they haven't really managed to successfully plead it so far. Another thing I would add here is they don't cite a single case that I'm aware of where you have almost no publication of a defamatory statement when somebody injects themselves into a particular forum, and there's no allegation of any actual damage at all in which jurisdiction was found. In addition to that, even if it were found that there were purposeful injection here, we would submit that the case law that deals with the question of reasonableness and whether it's really reasonable to hold Dr. Ranema to California jurisdiction based upon one e-mail and one phone call, it's just simply not reasonable. What's your best case for that proposition? What's your best case for that one? Yes, Your Honor. The two best cases for that proposition would be FDIC v. British American Insurance Company. That's 828 F. 2nd 1439. And also the Fields case, which we cite as well, 796 F. 2nd 299. Let me ask you the question I asked your opponent. It appears to me that the judge focused on the RICO claim, quite correctly found no jurisdictional basis in the United States for the RICO claim, and just missed, either because pages were missing from the electronic version or something else, just missed the defamation claim. There's nothing in the judge's ruling about the defamation claim. You may be right. There may be no jurisdiction. She may be right. There may be jurisdiction. Why don't we send this all back to the district judge and say, oops, through what appears to be a perfectly understandable mistake in the system, you missed it. Go rule out it in the first instance. Well, first of all, Your Honor, we articulate numerous other grounds for why this happened. That's right. But he never reached them, and now you're asking us to reach them in the first instance. Well, actually, under the circumstances, I am, Your Honor. I know. But I'm asking, why under the circumstances don't we send you both back and let you fight it out there? It's clear the order refers to some missing pages, but they're not the missing pages with the defamation claim. Right. Right? Right. And there's nothing in the order itself that mentions the defamation claim, right? I believe that's correct, Your Honor. So wouldn't it be safe for us to assume then that he never actually dealt with the defamation claim? Well, I think, again, Your Honor, the question was whether or not there were sufficient allegations of minimum crime tax. Right. But you're asking us to decide that in the first instance. Why would we do that? Well, because it would be otherwise unreasonable for there to be jurisdiction held over my client, number one. And, number two, I articulate other grounds. And as you pointed out in the appellant's opening argument, you can affirm what I just said. So all you guys love us, and you don't want the district judge to rule on these issues that the district judge missed, huh? One of you is going to be unhappy at the end of it. Why don't you be unhappy in front of the district judge?  Your Honor, they have four chances to amend this complaint, and they really haven't alleged any injury in California on the defamation claim. And as Your Honors have pointed out, they really haven't adequately alleged a RICO claim. So it seems to me that now is the time to get rid of this case. Did you want to give your colleagues a chance to? Thank you, Your Honor. Thank you. I forgot this question I've been waiting to ask. Maybe it's the next person. I hope it's not me, Your Honor, because I represent the Associated Newspapers and David Gardner defendants. And because counsel did not get to this issue, anything involving my clients in the oral argument, I'm happy to answer any questions. I do have a question, and it's really procedural here. And I may have this sequence wrong, but I think I have it right. Judge Morrow originally has both cases, correct? That's correct. And when this case that is now before us was originally filed, it did not include a claim against your clients. That's correct. And they moved to include a claim against your clients. Sometime later, yes. Sometime later, and Judge Morrow said fine, granted the motion. No, actually, that's not correct, Your Honor. There are two separate lawsuits. Right, and I'm focusing on the one in front of us. The one in front of us never was the addition of our clients was not requested of Judge Morrow. That's what I was asking. Which district judge granted that motion? Neither. They simply filed by stipulation a third amended complaint. Okay. And without asking anyone, added in new parties. Okay. But the case was still in front of Judge Morrow at the time, was it not? When it was filed, it was in front of Judge Morrow. She made no rulings on that. Okay. That was my question. Good, you've gotten to my question. Is there somehow in that sequence of events some imprimatur to the claim splitting? Not at all, Your Honor. It was never before Judge Morrow. She made no rulings. She was not asked to make a ruling on that, and she made no ruling. Nor did our clients have any opportunity to be heard in front of Judge Morrow on that issue. When did you first object to the second amended complaint that added a claim against your clients? I believe it was the third amended complaint in this case, Your Honor, added a claim against our clients. Okay, I'm sorry. And we moved to dismiss immediately. As soon as you saw the third amended complaint? Correct. Okay. And you were already dealing with the other lawsuit in front of Judge Morrow? That's correct, Your Honor. And she never, they added these claims and the RICO claims against our client before the order that they now try to use as their justification for having not included these claims in the original lawsuit against our clients. So they could not have refrained from suing our clients for RICO based on an order from Judge Morrow that she hadn't issued yet that was simply a denial of transfer request. That was the only thing Judge Morrow did related to this lawsuit. She denied the request to transfer it back to her. At that point, they'd already sued our clients in this case, even though they already had a pending lawsuit in front of Judge Morrow asserting 14 different claims. They blew their deadline, which they've admitted, to add another claim in front of Judge Morrow. That was the other question I was going to ask. They can't amend in front of Judge Morrow now, right? I understand that point. Is there more you'd like to tell us? No, Your Honor. I'd like to leave some time for my co-defendants. We'd like to hear from them, too. Thank you, Your Honor. You have to be the guy. You're the last one. I was going to begin by saying it's me, Your Honor. Nice to meet you. Nice to meet you. Mark Crooks for the Law Society of England and Wales and the five individuals associated with the Law Society of England and Wales. Could you begin by answering Judge Kristen's question, if you remember it? I would have to be reminded of it. My question is, why isn't the opposing counsel correct that this statute, the Foreign Sovereign Immunity Act, does not apply to Maine, Lees, Middleton, and Hagerty? It does not directly apply, Your Honor, but the common law provides sovereign immunity to agents of foreign sovereigns acting within the course and scope of their responsibilities. Did the district judge rule on a common law basis?  He did not refer to it in his order, but it is raised briefly in our papers and was not really addressed by the other side as a distinction at the time and really wasn't brought to the court's attention. Would common law immunity apply to people who did what this complaint alleges, which is to say got together and conspired to hook up a case against somebody? Well, Your Honor, to my mind, I hadn't really thought of it that way, but it really raises issues of vicarious liability. It is true that the Third Amendment complaint, as all the others, allege that these individuals were acting as agents of the Law Society of England and Wales and that the Law Society of England and Wales is vicariously liable for their conduct. But let's assume the Law Society of England and Wales is a state organ and therefore can't be liable. Can individuals working for it who act with corrupt motives be liable? Are they entitled to common law immunity? Well, you'd be testing my knowledge of, I assume, California state law for vicarious liability, but it is my understanding that under California state law, individuals who behave with corrupt intent or inappropriately would commit intentional torts in the course and scope of performing their duties. For example, a police officer who rapes an individual in a traffic stop is acting within the course and scope of performing his duties. To take 1983, which is a stranger area, for example, we can't hold the state liable for its agents' acts that violate constitutional rights, but we can hold the agents liable even though the state's not liable. And that's generally a principle of agency law. If, in fact, these individuals acted the way the complaint describes, why are they entitled to common law immunity? Is your argument they get common law immunity solely because there is state immunity for their employer? No, I'm not referring to any state immunity for their employer. They are accused of carrying out a corrupt scheme conceived by the senior members of the Law Society of England and Wales and pursuing it under color of law in England through the legal authorization to seize a solicitor's law practice and pursue legal proceedings to strike them from the rolls, all of which is directly within the scope of what the Law Society of England and Wales is charged to do through the solicitor's regulation authority. And all of these people are alleged to have acted as agents of the SRA in doing that. So is the common law immunity under that circumstance absolute, no matter what you do? Well, Your Honor, I believe so. See, I thought common law immunity was qualified, and that's what I'm trying to find out. Is there an exception here that the complaint invokes? Frankly, it seems to me that your argument would prove far too much. I'm not arguing. I'm asking. But the point you're sort of suggesting would prove far too much. If it were simply enough to file a complaint saying that the agents of a foreign sovereign engaged in misconduct and therefore lost their right to common law sovereign immunity even if their employer-slash-principal were entitled to sovereign immunity, then it's hard to see when individuals would ever be entitled to that type of common law immunity because it almost necessarily requires that a complaint complaining about their conduct would allege some form of misconduct on their part. But did the district court in its order do analysis of the common law immunity? The district court did not. And none of these arguments were raised before the district court. And no distinction between the foreign sovereign immunity and the common law was brought to the court's attention to suggest that the analysis would be different, the implication in the plaintiff's papers. But under the law, the analysis is different, isn't it? And it has to be. Well, Your Honor, the analysis is that agents acting within the course and scope of their duties are entitled to sovereign immunity if the agency is entitled to sovereign immunity. There was a finding that the agency is entitled to it. And we have a third amended complaint alleging that each of these individuals participated in a scheme in the course and scope of their duties. I think I understand. I think we all understand your position. But I'm a little squishy on whether this was or was not briefed before the trial court. I think when you were speaking to Judge Hurwitz, you said that you mentioned it in your brief. It is, yes. It is raised in our brief. Give me that cite. Brief at, well, we just have brief at 34 to 36. That will work. 34 to 36. Your brief, you mean. Right. And the description of it here in front of me is, defendants did make the arguments cited supporting legal authority, and the district court ruled on the issue of the individual defendant's immunity. So we reference legal authority on the common law. And one quick follow-up question. Would that include Mr. Hegarty? Hegarty? I believe it does. Because he's a private solicitor, right? Well, he is a private solicitor who is acting as a member of the adjudicatory panel that authorized the seizure of Mr. Mariscandari's law practice and authorized the original investigation into Mr. Baxendale Walker. So his only connection to this case is as a member of the tribunal that authorized the conduct. I know we're way over time, but there's four parties. Can you address, if you would, the first question I asked opposing counsel? Given that the proceedings in England are not ongoing, I don't know whether they're final or not. There seems to be some dispute about that. Does that affect, I mean, we can affirm dismissals on any basis supported by the record. How does that affect the claims against your clients who are claimed to have somehow wrongfully instituted these proceedings which are now concluded? Well, Your Honor, the proceedings in England are final. I believe that that's really acknowledged. The only point that was ever made by the — Is that they might seek leave to appeal later. I understand that. I'd file them again. And the Middleton Declaration lays out the areas in which the allegations in this complaint were already raised and rejected. Is this a collateral attack, I guess I'm asking, with respect to the allegations against your clients? Is this a collateral attack on the concluded U.K. proceedings? Well, a collateral attack would suggest that they would somehow undo or undermine the U.K. proceedings, which I don't think they can do. It's more a double dip, a second bite at the apple, which I guess is a less technical legal term than a collateral attack. But I would suggest that, bearing in mind that the panel can affirm on any ground and bearing in mind also that the panel typically does not do that where issues have not been addressed by the district court, but bearing in mind that there is an exception where a remand would be futile. I've forgotten how much I'm bearing in mind, so tell me what I'm supposed to remember. Look, a remand would be futile because this case is a textbook case of foreign non-convenience in every respect. It is a case against the British Bar Association and its employees for taking over a law practice, two law practices in England, striking solicitors from the rolls in England, where all evidence, all witnesses are in England and where the issues have already been considered by the courts of England. As I suggested to Judge Bernal below, the most straightforward resolution here is the obvious one. This case doesn't belong in California Federal Court because it's a foreign non-case. You're now seven minutes over your time, so do you have anything else you wanted to add? No, only to respond to whatever questions you have. Anything further? No. Thank you. Counsel? First, I think the point was alluded to quickly that we have the right, I'm told by my client, he was informed by his U.K. lawyers that he has the right to reopen his appeal in England. What's the authority for that? I don't know. My client just told me that his U.K. lawyers advised him of that. All right. Thank you. I'd ask you with regard to Mr. Rochnema to look very closely at the Brainerd and the Ibrahim case where the call was not placed by the defamer. And do we have anything in the record that tells us who placed the call? Did the district court have anything in the record that told him who placed the call? I don't believe so, no. But I would add that as to Rochnema, it is clear that the district court was thinking about defamation because in the order which I just checked, it did mention that he's accused of defaming him in emails and phone calls. And also the Keaton case. As to Daily Mail, I'd ask you to look closely at the Dodd case. And finally, as to Mr. Rohrbach, I know your honors tend to disagree with me on this, but the SRA had said that my client had lied in England based on Mr. Rohrbach's statement. Tell me what's false in Mr. Rohrbach's statement because he premises each of the allegations of wrongdoing by your client by saying, I've looked at this document, if what's described in this document is accurate, then this was inappropriate practice of law in California. Does he ever make a direct assertion that your client did anything wrong? No, I don't think he does.  Thank you, your honors. Counsel, I'm sorry, but just one more thing. Opposing counsel argued that as to the Foreign Sovereign Immunities Act, that there was a, even if, I think he didn't say this, but even if the district court was wrong about that, as to the individuals, that the common law was argued, is that, do you want to respond to that? We disagree. We say that the argument was made, which said, the heading was, all of the defendants are immune under the Foreign Sovereign Immunities Act. That was then picked up by the district court judge in the order, which said, all of the defendants are immune under the Foreign Sovereign Immunities Act. And any of the sites that were made as to common law basically said that the individuals had state immunity as an extension of the foreign state. Common law immunity is very different. We sued in their personal capacities, that is, from their own pockets money, not from the money of the state. So the individuals have separate claims. Common law immunity is treated separately than FSIA immunity. So he gave me citations, and I'll go back and look at his brief at 34th through 36th about whether or not it was raised. Is your position that the district court judge did or did not rely on this? I don't think he relied on it at all. I don't think he even considered it. I got it. Thank you. That's a no. Thank you all for your argument. We appreciate it very much, and we'll go ahead and stand in recess.
judges: Burgess, Christen, Hurwitz